# SUPERIOR COURT,

## SPRING SESSIONS,

## 1889.

———•———

### JOHN ROBINSON *v.* FRANCIS C. SIMPSON.

*Runaway Horse—Racing in City—Negligence—Contributory Negligence—Damages.*

A plaintiff, being in any degree guilty of contributory negligence, cannot recover for personal injuries sustained.

In the case of a runaway horse, without fault of the driver or owner at the time it commenced, or want of proper care on his part to control it afterwards, no liability will be incurred for damage done to the person of another who was struck and knocked down by it in the street and suffered severe injuries. Otherwise when the driver is in fault.

Driving fast or racing upon a street of a city is an act of negligence and the person having control of the team will be liable in damages for personal injuries to another thereby sustained.

The violation of a city ordinance is of itself an act of negligence and the wrongdoer thereby becomes liable for any injury resulting therefrom.

A plaintiff recovering damages for personal injuries sustained from the wrongful act of another is entitled to consideration for medical attendance, medicine, and such other items as were the necessary consequences of the injury sustained, as loss of time, pain of body and mind, and such permanent injury as then exists and is likely to continue.

(*New Castle, February, 1889.*)

ACTION on the case to recover damages for injuries received by the plaintiff from being knocked down at Second and French streets by a horse driven by the defendant.

Thomas Denny testified that he was in company with Robinson on January 28, 1888, when the accident happened. The pavements were so slippery that they were compelled to take the street. When they started to cross French street, at Second, Robinson was struck by the sleigh of the Simpsons who were racing at the time. Robinson was then picked up and taken to his home.

John Robinson, the plaintiff, testified to how he had been struck by the sleigh and injured. One of his arms is still shriveled and he is unable to work at his trade. Before he was injured he made $12 per week, but now he can make but $10. During his illness he was attended by Dr. L. A. Kittinger.

Dr. L. A. Kittinger testified that he had attended the plaintiff, and described his injuries in detail. Witness had attended the defendant three or four times per day for several weeks and then once a day for several months. His bill for attending the plaintiff would not be less than $150 to $160.

Dr. J. M. Curtis testified that he helped Dr. L. A. Kittinger set Robinson's arm. The patient complained of pain where the bandage pressed against bruises.

Johnson Thatcher testified that he was near Second and French streets at the time of the accident. The pavement was very slippery and people were walking in the street. Did not see the Simpson sleigh until Robinson was struck. Robinson was apparently dead. Put him in the sleigh and took him home.

Harry Hollis corroborated the previous testimony in regard to the facts of the accident. Witness was a member of the I. O. O. F., and as one of the visiting committee visited him for about seven months.

Francis C. Simpson, the defendant in the case, testified that the horse which was driven on that day belonged to Harry W. Lowe, the harness belonged to his son Elmer C. Simpson, and he thought the sleigh was his own, but was not positive.

Mrs. Emma Wiley testified that she was present when Robinson was brought home and saw him at various times afterward. He suffered great pain and complained much of the back of his head. This lasted two or three months. Afterwards he had more control of himself.

*Mr. Nields* made a motion for a non suit on the grounds that the defendant must be shown to have been guilty of negligence and also that the plaintiff must be free from any negligence. The accident itself does not show negligence. The proof must be on the plaintiff to prove negligence on the part of the defendant. If the plaintiff did not carefully look up and down the street before crossing he was guilty of negligence.

It had not been proved, he said, that either Francis C. or Elmer C. Simpson, was driving. The only shadow of testimony that Francis C. Simpson, the defendant, was driving was the impression of Mr. Harp that Elmer C. Simpson got out on the right of the sleigh. A person who is driving always gets out on the left side.

The motion for a non-suit was denied.

Francis C. Simpson stated that he had been invited by his son, Elmer C. to take a sleigh ride. His son drove a horse belonging to Harry W. Lowe. When they got on French street near Second the horse began to run. A crowd of people were standing in the middle of Second street. The horse was brought up and began going in a series of short jumps. Robinson was struck and knocked down and the sleigh passed over him. Witness went to get out of the sleigh and fell. The man was picked up and taken home. Shouted to the men to get out of the way before the man was struck. Had not raced the horse nor thought of doing so.

*Lore* and *Emmons*, for the plaintiff.

1. All persons have a right to walk in a public highway, and are entitled to the exercise of reasonable care on the part of persons driving carriages along it. It is quite clear that a foot-passenger

has the right to cross a highway, and that persons driving carriages are liable if they do not take care so as to avoid driving against the foot-passengers who are crossing the road.

*Angell on Highways*, Sec. 341 ; *Boss v. Litton*, 5 Car. and Payne, 407 ; *Leame v. Bray*, 3 East, 593 ; *Cotteril v. Starkey*, 8 Car. and Payne, 691 ; *Wakwman v. Robinson*, Bing., 213.

2. Driving at an immoderate rate of speed is, in itself, a culpable negligence, from which, if an injury result, without fault of the person injured, the author is liable for it.

*Angell on Highways*, Sec., 342 ; *U. S. v. Hart*, 1 Peters, 590 ; *Right v. Malden R. R. Co.*, 4 Allen, 444 ; *Wiltz, Grand Jury*, Note to Car. & Payne, 694, Per Beste, C. J.

3. A person who leaves the ordinary side of the road is bound to use more care and diligence, and to keep a better lookout to avoid concussion, than would be requisite if he were to confine himself to the proper side.

*Angell on Highways*, Sec., 349 ; *Pluckwell v. Wilson*, 5 Car. & Payne, 375.

4. Disobedience of a city ordinance is unquestionably, to say the least of it, inexcusable if not wilful negligence.

*Jones v. Belt*, Chief Justice Comegys Ordinances Violated City Ord., 473–6.

5. Measure of damages includes compensation for all expenses for medical attendance, a reasonable allowance for nursing and drugs, for his loss of time and wages, and for his pain and mental suffering resulting from the accident; and if he has received permanent injuries which will diminish his ability to make a living, he will be entitled to recover all the pecuniary loss which he is likely to sustain by reason thereof and for his future sufferings.

*Jones v. Belt*. Chief Justice Comegys.

6. Where parties meet suddenly without time to deliberate, the one on the wrong side of the road is liable for injury, unless it appear clearly that the party on the right had ample means and opportunity to prevent it.

*Angell on Highways,* Sec., 337 ; *Chaplain v. Hawes,* 3 Car. & Payne, 554, 14 E. C. L. R.

7. If Francis C. Simpson was the owner of the sleigh, and was responsible for the keep of the horse, and took horse and sleigh to Gregg & Bowe's shop, for his son, he had such an interest as took him out of the rule of a mere passenger, and made him a oint wrong doer.

*Davy v. Chamberlain,* 4 Esp., 229 ; *Bishop v. Ely,* 9 Johns, 294 ; *Judson v. Cook,* 11 Barb., 35 Pa. St., 128.

*Benjamin Neilds* for the defendant.

It is essential that two things shall concur before the plaintiff can recover.

1. That the defendant shall be shown to have been guilty of negligence which produced the injury complained of.

64 Ill., 161 ; 10th Exch. L. R, P., 261 ; *Lane v. Crombie,* 12 Pick., 177.

2. That the plaintiff shall have been free from any negligence which shall in any way have contributed to the injury received.

*Brown v. Collins,* 53rd N. H., 442 ; *Manzoni v. Douglass,* 6th Q. B., 145.

3. That the occurance of the accident does not in itself prove negligence in the defendant.

4. That the burden of proof is on the plantiff to establish negligence on the defendant and freedom from it on his own part.

5. That the plaintiff before attempting to cross French street

was bound to look up and down to see if there were any approaching vehicles, and if he neglected to do so, he was guilty of neglect and defendant is intitled to.a verdict.

*Baker v. Savage*, 45 N. Y., 191.

6. If at the time plaintiff reached French street he either saw or could have seen defendant's and other sleigh approaching, and if from their position at that time with their then rate of speed there was any danger to be apprehended of his not being able to cross safely that the attempt to do so was an act of negligence which deprives him of his right to recover in this action.

*Moody v. Osgood*, 54 N. Y., 488.

7. That if the horse was in the possession of and under the control of Elmer E. Simpson, and he took his father into the sleight with him as a passenger, the father cannot be subjected to an action in case of any misconduct in the driving of the son who had the control of the horse.

*Little v. Hacket*, 116th U. S. S. C. R., 366 ; *N. Y. Lake E. & W. Co. v. Steinbrenner*, 47th N. J., 161 ; *Jones v. Corporation of Liverpool*, 14th Q. B. D., 890 ; *Davy v. Chamberlain et. al.*, 4th Espnass, 229 ; *Wood's Law of Master and Servant*, 627.

Upon the first, second, third, fourth, fifth and sixth points see also.

*Crocker a. Knickerbocker Ice Co.*, 92nd N. Y., 652 ; *Blackwell v. Wilson*, 5th Carr. & Payne, 375 ; *Sullivan v. Scripture*, 3rd Allen, 564 ; *Losee v. Buchannan*, 51st N. Y., 576 ; *Hanmack v. White*, 103 E. C. L. R., 587 ; *Patterson v. P. W. & B. R. R.*, 4th Houston, 109, 112 ; *Lynam v. P. W. & B. R. R.*, 4th Houston, 599 ; *McCoy v. P. W. & B. R. R.*, 5th Houston, 605, 607 ; *Bullin v. Frink*, 51st Conn., 342.

COMEGYS, C. J., charging the jury :

This is an action brought to recover for injuries of a very seri-

ous character sustained by the plaintiff on the 28th day of January 1888, in this city at the intersection of French and Second streets, in being run over by a horse and sleigh—the occupants of the latter being the defendant Frank C. Simpson and his son Elmer Simpson. The casualty took place, by all the testimony, about half past four o'clock in the afternoon, and while parties in sleighs were racing upon French street, and down it in the direction of the Christiana River. A short time before the occurrence of the collision, the plaintiff and the other workmen employed in the shops of the Harlan & Hollingsworth Company had been discharged and were on their way, some of them, to their homes East of French street along and down Second street. When the plaintiff reached the intersection of French and Second, by the testimony of himself and of the witness Thomas C. Denny, he attempted to cross it and reach the sidewalk at the Northeast corner of French and Second, but failed to do so by reason of the violent prostration of his person by the horse and sleigh mentioned. He was very seriously injured, so much so as to be obliged to keep his bed for five or six weeks, and to be unfit for any labor in his trade of car builder for about ten months. He states that he is now unable to do any work, except such as, in itself is, to some extent unremunerative— it being of very inferior kind in his trade. During all the time of his illness he was put to much expense for medical attendance and drugs which he has laid before you by competent proof. This action is brought to obtain redress for his injuries, and you are to decide, upon the testimony and the law to be given you, whether he is entitled to it at the hands of the defendant in this action. If you should decide that he is, then you may take into account in estimating it, the aforesaid expense of medical attendance and drugs, and such other items as were the necessary consequence of the injury sustained—that is, loss of time in his employment, estimating it according to the proof, pain of body and mind, and such permanent injury as appears by the testimony to be still existing, and to be likely to continue—the result of this calamity. Whether he can recover from the defendant is a mixed question of law and fact.

There is no pretence here that the injury to the plaintiff was one of design; but that it was occasioned by the negligence of the defendant. You are to decide two questions,—First, was the collision an act of negligence; if so, was the defendant guilty of the negligence? Second, did the plaintiff by his conduct on the occasion contribute, in any way, to the collision by his negligence.

Negligence in law is the want or absence of diligence and is the want of such care or circumspection, as a reasonably prudent man takes, in cases like this, of his own person. If danger be apparent, such as one will take steps to avoid it; if he do not, he is, himself, guilty of negligence, and cannot recover for an injury to himself resulting from another's negligence or want of care. He is held in law to have contributed to the damage he sustained; to be himself guilty of contributory negligence, barring him from all remedy. The law does not in such cases undertake to measure the different degrees of negligence, for it has no means of doing this, but denies redress where both parties are in fault.

The ground taken by the plaintiff in this case and which he alleges he has established by his proof, is—that the defendant caused his injury by his careless driving on the occasion of the 28th of January of last year. Whether the horse and sleigh were then carelessly driven is a question for you to decide upon the testimony before you.

If you determine that they were, and that he drove them or had the control of the driving then he, the defendant, is liable for all the damages that resulted from the collision. But the latter contends that the casualty was not an act of carelessness, but one of pure accident; that the horse ran away and became entirely uncontrollable, and this without any fault on his part, or that of the driver, taking that person to have been his son who was in the sleigh with him, and alleged by him to have been the driver. That if there was any carelessness of management of the horse, the plaintiff had notice of the danger in time to get out of the way as others who were present got out of the way, but unfortunately for himself,

did not do it.   He further contends and alleges that he has made full proof of it before you, that he had nothing to do whatever with the management of the horse and no sort of control over his movements; that he was for the time being the horse of his son, and under his control.   He further claims to have proved before you that he owned no part of the establishment, but was a mere passenger, without ownership.   I leave all the contentions on both sides upon the facts to you without any comment.   It is yours to decide whether this casualty was a pure accident, or a case of negligence without any contribution to it by the plaintiff; and if the latter whether the defendant was in any sense the proprietor of the team, or had any control over its management.   If you decide it was purely accidental, that is a case of runaway without fault of the defendant at the time it commenced, or want of proper care on his part to control it afterwards, then no liability was incurred by him that can be enforced in this Court.   Likewise, there is no liability, if the plaintiff's own want of care of himself on the occasion, was cause in part of the calamity, even if the defendant was the owner or proprietor in any sense of the team on the occasion of the drive, or had right to control its movements.   But on the other hand, if the defendant had control in any respect so as to be able to govern its management, and the injury was from the want of proper care in such management which was not qualified by any want of care on the plaintiff's part, then he is liable for all the injury that the plaintiff may have proved before you.

With respect to the matter of negligence, I have to say to you that certain things are, or amount to negligence in law, whether any active or positive negligence be proved or not.   The violation of an ordinance of this city is of itself, (*per se* as we say) an act of negligence, which in a legal controversy like this, only requires to be proved to render a wrongdoer liable for any injury resulting from such his misconduct.   Driving fast, or racing upon a street of the city is an act of negligence by reason of an ordinance which has been read in proof before you, as indeed it would be without any

such ordinance. The streets of a city are not to be used by drivers so as to endanger the safety of persons or property, and while a foot passenger may not recover for injury which by the use of ordinarily prudent care he might have avoided, yet he has a right to use the streets in walking and is not to be obstructed and hindered in the exercise of his right by drivers or others—who have no superior right of way over his own.

To conclude; if you are satisfied from the weight of the testimony on both sides before you, that the injury to the plaintiff was not owing to any actual want of proper diligence in driving the team in question, but was purely accidental as being entirely beyond the power of the defendant to prevent by such care as ought to have been observed in driving in a crowded and slippery street, then you should find for the defendant; so, if it was the result of the breach of the ordinance of the city against fast driving, and yet the plaintiff knew of the approach of the team, or could have known of it by the use of ordinary care on his part, and did not use sufficient means to get out of its way at the time, then also you should find for the defendant.

In like manner you should find for him if you believe from the testimony that he had nothing to do with the team, as owner, hirer, or otherwise. But if on the contrary you either believe from the weight of the testimony before you, that the defendant had something to do with the team as owner or hirer or otherwise; that the plaintiff was come upon suddenly before any warning was given him, or notice of the approach of the team received, so that he might have escaped prostration by it if properly regardful of the peril he was in; or that the collision with him was not purely accidental but the result of fast driving contrary to the ordinance, the plaintiff being in no default; then the plaintiff is entitled to your verdict, and for such amount as you believe from the testimony he ought, under all the circumstances, to receive at your hands.

A word more. In this case there is much conflict of testimony. It is your duty to reconcile the difference of facts stated by

the witnesses the best way you can. In so doing you should consider all the testimony before you carefully, giving to that of each witness the credit you think it is entitled to all things considered.

Then you are to weigh in your minds the aggregate of each side's proof, and give your verdict to that side which appears to you to have the greatest weight—that is, the greatest likelihood to be correct; to be the most reliable. And as all the parties in this case, that is the plaintiff and defendant to this suit, and also to another one against a different defendant for the same cause are interested in one way or another in the result of this trial, you are to consider how far, if at all, their statements are biased by their interest, and make allowance accordingly.

Verdict for the plaintiff.